**E. & F. CONSTRUCTION CO. v. UNITED STATES.**

No. 47700.

United States Court of Claims.

April 3, 1950.

See also, 75 F.Supp. 460, 110 Ct.Cl. 172.

Harry D. Ruddiman, Washington, D.C., for the plaintiff. King & King, Washington, D. C., were on the briefs.

Francis X. Daly, Boston, Mass., with whom was Assistant Attorney General H. G. Morison, for the defendant.

Before JONES, Chief Judge, and HOW-ELL, MADDEN, WHITAKER, and LITTLETON, Judges.

JONES, Chief Judge.

This plaintiff sues for overtime pay which it paid for labor in carrying out a construction contract during the war period.

Plaintiff, under date of October 23, 1942, contracted, through the Federal Public Housing Authority (FPHA) as the agency of the Government, to build two war housing projects for the defendant. There were to be 498 dwelling units constructed in Bridgeport, Connecticut.

It was a lump-sum contract, all labor and materials to be furnished by plaintiff for a consideration of $1,752,000. Work was to begin October 27, 1942.

Plaintiff's bid was based on a regular 40-hour workweek. It made no allowance for overtime, except for the excavation and pouring of foundations. It included a total of $4,500 as the extra time on the two projects for this purpose. The contract did not require plaintiff to work a 48-hour week but stipulated that any work performed between 5:00 p.m. on Friday and 7:00 a.m. on Monday, or on legal holidays, should be paid for at the rate of time and one-half, and any such work found necessary should be performed without extra expense to the Government.

The time within which the work was to be completed was specified, the several periods for completion of the different parts of the work being set out in finding 3.

While plaintiff did some overtime work each month from the beginning, this was confined largely to excavation and pouring of foundations until the latter part of February or early March 1943.

The War Manpower Commission had been established on April 18, 1942. In early 1943 there was a critical labor shortage in the Bridgeport area and it was designated as such an area on February 1, 1943.

On February 9, 1943, the President issued Executive Order 9301, 29 U.S.C.A. § 207 note, establishing a minimum 48-hour workweek for all plants, factories or other places of work for the duration of the war. It placed the administration of the Order under the War Manpower Commission and gave it broad authority.

The Commission on February 22, 1943, designated certain areas, including the Bridgeport area, as subject to such Executive Order.

Shortly after Executive Order 9301 was issued a conference was held between Mr. Kenworth, the Housing Authority's representative in charge of the construction work involved, and plaintiff's president, Mr. Epifano, at which the latter was told that the Executive Order, stipulating a minimum 48-hour week, applied to the instant projects and that plaintiff should make preparations to comply. Plaintiff stated that a change order should be issued directing the 48-hour week and that plaintiff should be compensated for the extra cost. Mr. Kenworth advised that such a change order would have to come through the regional office at Boston. Later plaintiff again asked for such a change order and was told that the regional office had taken the matter up with the main office in Washington which had ruled that since the Executive Order was nation-wide in scope, whatever decision was made would apply to all projects in the United States which had been contracted for before the order went into effect.

About March 2, 1943, plaintiff and its subcontractors began adjusting gradually to a 48-hour week.

By letter dated March 22, 1943, the project manager advised plaintiff he had received a directive stating that because Executive Order 9301 and the directives and regulations issued thereunder had the force of law, it would not be necessary, as an interim expedient, to write into contracts a requirement that contractors should comply, since they were deemed to have knowledge of the law; and that as to existing contracts no change order should be issued to contractors who were complying with the directive.

This was the first written notice plaintiff had received directing it to comply with the terms of Executive Order 9301 and the regulations issued thereunder.

Following receipt of this letter plaintiff instructed its workmen to work 49 hours per week, and similar instructions were given to subcontractors.

About mid-April plaintiff's president became worried because they were working overtime and he had received no change order. He took the matter up with the Director of the Bridgeport Housing Authority, H. C. Poole, who advised that it would be referred to the Boston office and that as soon as the general decision came from the main office in Washington the issue would be determined. This was followed by a letter from plaintiff to Poole, stating that by the time the contract was completed the overtime labor cost would be about $49,-

560, and asking that this be called to the attention of the proper authorities.

By telegram dated February 12, 1943, David L. Krooth, Acting Commissioner of the Federal Public Housing Authority, had advised all regional directors that until further notice "do not authorize any increase in contract price of lump-sum construction contracts which have already been let, based on the ground that the above Executive Order [9301] increases the contractor's costs."

On March 15, 1943, David L. Krooth, as General Counsel of the Federal Public Housing Authority, had instructed regional directors as follows:

"As to all existing contracts, no change order providing for additional compensation shall be issued to contractors who have changed the workweek to comply with the aforementioned Executive Order and regulations."

On April 17, 1943, the Federal Housing Authority approved, effective May 1, 1943, instructions to the effect that while the additional costs were in the nature of unanticipated expenses which the lump-sum contractor was required to absorb, nevertheless it was felt that the hardship imposed on some contractors might have the effect of impeding the war housing program; that therefore FPHA would consider claims submitted for the actual net additional expense. Several conditions were set out as a requirement for such consideration. These are set out in finding 22. The regional director was to make detailed findings and recommendations. These recommendations were to be subject to the approval of the FPHA Commissioner.

On June 11, 1943, S. K. Wiley, the regional director at Boston, wrote plaintiff that he had been informed that FPHA would consider its claim subject to certain conditions and subject also to a recommendation by the Regional Office. He asked the plaintiff for data on which to base any recommendation he might make.

During the course of the work change orders 9 and 14 were issued in reference to subflooring and the contract was increased on that account $24,000. These change orders occasioned some delay, the extent of which cannot be determined from the record.

Plaintiff also experienced material delay on account of the change in the type of some boilers on project 1–4.

There was likewise some delay in obtaining needed critical materials, including steam pipe and kitchen cabinets.

There were also numerous other change orders.

There were delays due to adverse weather conditions, as well as in connection with change order G–23, dated May 10, 1943, and for which latter change order an increase of $1,597.90 was allowed to cover the cost of the work.

The change orders were accepted by plaintiff.

For the various change orders plaintiff made claims for extensions of time. Extensions as to some of the change orders were granted as set out in finding 34. As to others, action was deferred until completion of the contract.

On February 10, 1943, plaintiff signed a release on the entire project, reserving as outstanding and unsettled

Reimbursement for overtime due
   to Executive Order 9301..... $41,608.69
Extensions of time to cover all delays.

After the regional director at Boston had sent the FPHA construction adviser to Bridgeport to examine plaintiff's books and records as to the amount of overtime involved, and in order to determine whether plaintiff would have been able to finish the work of the contract within the original specified contract time, plus proper extensions, by working a 40-hour week, and after some further correspondence, the regional director at Boston wrote plaintiff on December 20, 1944, that he had forwarded recommendations to the central office.

Plaintiff received from the regional office a copy of these recommendations, which among other things contained a finding that plaintiff had placed its bid on a work week of 40 hours, that notwithstanding being hindered by greater rock excavation than had been anticipated, it had been able

to finish the foundation work ahead of schedule, that most of the other phases of the work would have been completed according to schedule but for delays caused by change orders, priorities and while awaiting decisions, that if it had been allowed to proceed normally it could have finished its work within the scheduled time, that the progress schedule showed that plaintiff should have completed its work within the time specified, plus authorized extensions, by working 40 hours per week; that further extensions of time should be granted as set out in the recommendations regardless of whether its claim for compensation was allowed; that the pay rolls had been thoroughly checked and showed an extra cost on the two projects due to overtime worked in the sum of $41,467.49 and that

"Based on our detailed review of the facts presented by the contractor, the construction progress reports and pay rolls as outlined above, we recommend that favorable consideration be given to reimbursing the contractor for the extra cost to him of working his employees longer than originally contemplated due to Executive Order 9301, the total amount of this reimbursement for the two projects being, $41,037.49."

This was in accord with the recommendation of defendant's project engineer.

On March 26, 1945, the regional director wrote plaintiff that it had been administratively determined that its case was not a proper one for relief under the First War Powers Act, 50 U.S.C.A.Appendix, § 601 et seq., and Executive Orders Nos. 9001 and 9116, 50 U.S.C.A.Appendix, § 611 note; and that if its claim was considered as one for damages the administrative officer had no jurisdiction to assess damages against the Government. The letter advised plaintiff that under its contract it had a right to appeal the decision within 30 days from that date.

Plaintiff filed an appeal to the Federal Public Housing Commissioner.

By letter dated April 19, 1945, the Commissioner denied plaintiff's appeal stating that there was no specific provision of the contract permitting an adjustment of the contract price, that the evidence and record did not justify a reformation of the contract under the First War Powers Act and Executive Orders 9001 and 9116; that the issuance of Executive Order 9301 was not necessarily the proximate cause of the increased cost, that the contracting agency is not responsible for obligations imposed upon a contractor by the Government acting in its sovereign capacity; that the contract required overtime work to be completed on time; that the contractor worked overtime before Executive Order 9301 went into effect, and that the evidence tended strongly to refute any presumption that, at the rate of progress it made, it could have finished the work within the time specified, plus justifiable extensions, if it had worked only 40 hours per week. The letter further stated that it had been determined that, by reason of the contract requirements the claim was not allowable, and that it was "not a proper case to reform the contract without consideration," and that

"In view of this determination, it is unnecessary to consider whether all or any part of the overtime claimed is correct."

Thus from such examination of the printed record as he was able to make, the Public Housing Commissioner was able to completely reverse the findings and recommendation of the experienced men who were handling the operating end of the project for the Government and who knew the facts firsthand. Some men "drest in a little brief authority" can do that.

■ It is well settled that the Government is not liable for its general acts as a sovereign, as such. Horowitz v. United States, 267 U.S. 458, 45 S.Ct. 344, 69 L. Ed. 736; Clemmer Construction Co. v. United States, 71 F.Supp. 917, 108 Ct.Cl. 718.

■ Plaintiff cannot recover under the terms of the contract as such.

The real question in the case is whether plaintiff has brought itself within the terms of the First War Powers Act and is therefore entitled to compensation for the added cost due to the overtime work order.

There is no doubt the power was given the President to authorize any department or agency of the Government, under proper regulations to amend or modify contracts or

payments thereunder whenever "he deems such action would facilitate the prosecution of the war."

Plaintiff claims that the language of the letter of defendant's regional director, dated June 11, 1943, promising consideration of plaintiff's claim, is practically the same as the letter of the contracting officer in the case of C. B. Ross Co. v. United States, 74 F.Supp. 420, 109 Ct.Cl. 690, certiorari denied 335 U.S. 813, 69 S.Ct. 30.

The letters are for all practical purposes identical.

In the instant case the Federal Public Housing Commissioner denied plaintiff's claim but in so doing failed to pass upon whether plaintiff was entitled to additional time by virtue of the numerous change orders. As to some of these change orders extensions had been granted, but as to others the question of extension of time had been deferred until the completion of the contract. The Commissioner found that plaintiff could not have finished within the specified time plus extensions granted. In these circumstances it seems strange that he should conclude that it was unnecessary to pass upon the question of whether plaintiff's claim for extensions of time by virtue of change orders had merit. How he could find that plaintiff could not have completed the work within the specified period, plus justified extensions, when he did not know how much extension of time plaintiff was entitled to have by virtue of the change orders, remains a mystery. Certainly it is not explained either in his letter or elsewhere in the record.

We find that if the additional extensions of time that were justified by the change orders for which extensions were not passed upon or granted had been properly acted upon, plaintiff would not have been required to work more than 40 hours per week after June 11, 1943, to complete the contract within the specified time plus justified extensions, but for the Executive Order and regulations; that the overtime work after that time enabled plaintiff to complete the contract earlier than the time required, thus tending to relieve the housing shortage and facilitating the war effort.

This brings the case squarely within the purview of C. B. Ross v. United States, supra, as to the overtime after June 11, 1943. We find that the overtime prior to that date would have been necessary even if proper extensions had been granted. At least the record does not clearly establish that overtime work prior to that date would have been unnecessary in order to complete the contract within the time required.

Plaintiff is entitled to recover the sum of $9,733.68.

HOWELL, MADDEN, WHITAKER, and LITTLETON, JJ., concur.