**JOHN A. JOHNSON CONTRACTING
CORP. v. UNITED STATES.**
No. 48985.

United States Court of Claims.
June 5, 1951.

Oren C. Herwitz, New York City, Max E. Greenberg, New York City, on the briefs, for plaintiff.

Carl Eardley, Washington, D. C., Newell A. Clapp, Acting Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

MADDEN, Judge.

The plaintiff sues to recover excess labor costs incurred by it in performing a contract with the United States, which excess resulted from its keeping the job open on Saturdays, as it was required to do by Executive Order No. 9301 dated February 9, 1943, 29 U.S.C.A. § 207 note. The plaintiff was obliged, by its contract, to pay time and one-half for Saturday work, and the payment for the half-time constitutes the claimed excess costs.

The Government issued invitations for bids for the construction of a War Housing Project known as Calvert Houses, in Riverdale, Prince Georges County, Maryland. Bids were opened on January 16, 1943. The plaintiff was the low bidder, but its bid exceeded the construction cost estimates, and the Government agency in charge, later known as the National Capital Housing Authority, decided to negotiate a contract with the plaintiff for a lower price, by substituting cheaper materials for some of the work. About February 5, 1943, the parties agreed on a contract and a price of $1,407,700. The Authority thereupon undertook to prepare a formal contract embodying the agreement, which formal contract was to be signed by the parties. On February 9, the President issued Executive Order No. 9301 which required all agencies of the Government to require their contractors to work at least a 48-hour week, in order to fully utilize the manpower of the country. The plaintiff learned of the order on February 10, and inquired of the Authority whether the order was applicable to its contract. It was advised that the order was applicable, but was urged to sign the contract nevertheless, since the War Housing was badly needed. The agent of the Authority told the plaintiff that he assumed that the plaintiff would be reimbursed for its excess costs resulting from the order, and he advised the plaintiff to file a claim for its excess costs at a later date.

On February 11, 1943, the plaintiff executed the contract, and in its letter returning the signed contract to the Authority it stated that its bid had been based on a 40-hour workweek, and that it reserved the right to appeal to the Authority for an adjustment of the contract "after an interpretation of this directive has been obtained from your office."

After it signed the contract, the plaintiff subcontracted a good deal of the work, advising the subcontractors in advance that they had to work a 48-hour week. The excess costs which the Saturday work would impose upon them were, therefore, included in their agreements, and had to be paid by the plaintiff, except as to one subcontractor, The Artistic Painting Company, which the plaintiff agreed to reimburse for its excess costs only if the plaintiff should be reimbursed by the Government.

The plaintiff began work on the job about March 22, 1943, working a 6-day week. The Authority, meanwhile, was considering what to do about the excess costs incurred by contractors such as the plaintiff. On April 17, the Authority issued to its regional directors instructions, quoted in our Finding 11, advising them that the Authority would, in order that the war housing program should not be impeded, "consider claims submitted by lump sum contractors for the actual net *additional* ex-

pense incurred as a result of an increase in the length of the workweek" resulting from the executive order. Under the instructions, the regional director was not permitted to approve claims, but only to submit them to the Commissioner of the Federal Public Housing Authority with certain specified findings and recommendations. The regional director had to find that the contractor based his bid on a 40-hour week, or on some week less than a 48-hour week, and that at the current rate of progress the contractor could have, by working the intended number of hours per week, completed his contract within the time specified in the contract. The regional director was to require of the contractor an agreement to shorten the construction period in proportion to the increase in the workweek. He was then to recommend the amount of the claim to be allowed, taking into consideration all the savings in overhead, rental of equipment, etc., which would accrue to the contractor from the lengthening of the workweek and the consequent shortening of the performance period.

The instructions said that the Commissioner of the Federal Public Housing Authority would, after receiving the report of the regional director, decide on the amount of the claim to be allowed, using powers contained in the contract itself, if possible, if not, the extraordinary powers which he had under the First War Powers Act, if the situation warranted. The First War Powers Act, 50 U.S.C.A.Appendix, § 611, empowered the President, or one authorized by him, to modify existing contracts without consideration, if to do so would facilitate the prosecution of the war. On May 18, 1943, the plaintiff wrote the Authority that it had received no advice as to how it might be compensated for its overtime. On May 19, the Authority answered the plaintiff, repeating in substance the contents of the instructions which had been sent to the regional directors, as summarized above.

The plaintiff's work was accepted by the Authority on October 15, 1943, which was within the original contract time as extended by several change orders which will be referred to hereinafter. The contracting officer on October 20 commended the plaintiff for its work.

On February 19, 1944, the plaintiff wrote the Authority saying that it had learned in conferences with the Authority's legal department that it could now obtain instructions as to how to file its claim for reimbursement for overtime resulting from compliance with Executive Order No. 9301. The Authority replied repeating, in substance, the instructions previously given to its regional directors. The plaintiff thereupon requested the Authority to make the findings required by the instructions and to reimburse it in the net sum of $32,467.43. See Finding 30.

On June 1, 1944, the job superintendent, on the request of his superiors, submitted a report containing conclusions which supported the plaintiff's claim. On April 9, 1946, the contracting officer made findings of fact and a determination of the plaintiff's claim. He concluded that the plaintiff was entitled to 21 more days of extension of time than had been granted in the change orders, which had already granted extensions of 92 days. But he concluded that he could not find that the plaintiff could have completed the work within the contract time, even as extended, by working a 5-day week. He therefore denied the plaintiff's claim. The plaintiff did not appeal from this decision, being advised by the Authority's General Counsel that since the claim was for damages for breach of contract, it presented a question of law not subject to administrative determination.

The Government does not urge that, because of a failure to appeal, or to take any other procedural steps, the plaintiff has lost whatever rights it may otherwise have had. But it does insist that, on the merits, legal and factual, the plaintiff has no case.

█ The Government urges that it never promised to pay the plaintiff its excess labor costs resulting from the Executive Order. It seems to say that when it advised the plaintiff how to file a claim for reimbursement, it was not offering to reimburse the plaintiff if it would comply with the conditions stated, but was saying merely that in

that case it would, or would not, at its pleasure, reimburse the plaintiff. We would not so interpret the arrangement, unless the evidence compelled us to do so. We think the question whether and how much a contractor should be paid should depend upon the facts and the law, and not merely upon the will of an official. In this case the plaintiff had not signed the formal contract when Executive Order No. 9301 was promulgated. The plaintiff could, arguably, have refused to execute the contract, since the Executive Order subjected it to an unexpected and costly burden. But the plaintiff was urged to sign the contract and proceed with the work, and was told that it could be assumed that there would be reimbursement. Then came the instructions to regional directors as to the prerequisites for their recommendation for reimbursement. These were communicated to the plaintiff, and it, as we shall see, complied in substance with the prerequisites. We think that the Government did agree that, if contractors fulfilled certain stated conditions, they would be reimbursed for the net increased cost of the compelled Saturday work, unforeseen by them when they agreed to the contract price. We have so held in C. B. Ross Co., Inc., v. United States, 74 F.Supp. 420, 109 C. Cl. 690, certiorari denied, 335 U.S. 813, 69 S.Ct. 30, 93 L.Ed. 369, and E. & F. Construction Co. v. United States, 89 F.Supp. 541, 116 C. Cl. 512.

■ The Government contends that, assuming that it made an offer, or a conditional promise, the conditions were not satisfied by the plaintiff. It says that we should not have found that the plaintiff computed its bid on the basis of a 40-hour week. The contracting officer found that the custom of contractors in the area at the time was to work a 40-hour week. He said that it might be inferred that the plaintiff so based its bid. He pointed to no circumstance indicating the contrary. But he said he could not make a positive finding to that effect, apparently because his instructions required him to base his finding upon estimate sheets produced to him. We do not read the Government's obligation as being destroyed by such fortuitous circumstances

as the death of the contractor's estimator, or the loss or discarding of the estimate sheets before it was known that they would be required by the subsequently announced instructions of the Government.

■ The Government contends that the plaintiff has not proved that it could have completed its contract work within the contract time if it had worked only a 40-hour week. The contracting officer said that he could not make such a finding. It is hard to see why he could not, on the basis of the subordinate facts which he found. He recognized that the plaintiff had been granted 92 days of extended time in connection with changes, and he found that it was entitled to 21 more days, for delays resulting from unforseeable causes not due to its fault. Adding these 113 days to the 150 days stipulated in the original contract, it would seem that the plaintiff's completion of the contract on October 15, 1943, represented an acceleration of completion proportionate to the increase in the workweek from five days to six. Perhaps the contracting officer's reluctance to make the finding was based upon his statement that a contractor with the Government is obligated, not merely to complete the contract within the stipulated period, but as much earlier as he can do so. If we apply such a doctrine in a case such as this, it would be impossible for the contractor to show that he had completed his work earlier than the contract required, since, by hypothesis, the contract required any earlier completion which he had accomplished.

■ In this suit the Government discards the extensions of time of 92 days which were granted the plaintiff in connection with change orders, and the additional 21 days which the contracting officer said in his report the plaintiff was entitled to, saying that these were acts of generosity by the Government which prove nothing as to whether the plaintiff could have completed the contract on time by working a 5-day week. The Government says that, as to some of the extensions, the whole period of performance of the work covered by the change order was granted, though other work was going on contemporaneously with the change order work. It is dif-

ficult to see, after the event, and with the evidence which is before us, the reason for some of the extensions. But they were granted by the Government's responsible and authorized agents, and have at least the weight of admissions against interest. A change may delay completion of a job, although the work involved in the change does not take long, and although other work is done contemporaneously with the changed work. The delay may be an indirect consequence of the change. And we are judicially aware that extensions of time are sometimes attributed to changes when the real cause of the delay may be something other than the change. We cannot, on the evidence before us, conclude that the Government's agents granted the plaintiff extensions of time to which it was not entitled under its contract. And if it was entitled to them under its contract, they must be added to the original contract period for the purpose of deciding whether the plaintiff could have completed its contract on time if it had worked a 5-day week.

■ It is equitable, and in accord with the Government's promise to reimburse the plaintiff, that the plaintiff should credit against its additional wage bill the savings which accrued to it from accelerated completion of its contract. These savings include reduced job overhead and machinery rental. The Government says they should include also a proper proportion of home office overhead. The plaintiff says that this was a locally supervised job and that its home office overhead was not reduced by accelerated completion. We recognize that the attribution of a proportion of home office overhead to a particular contract is an indulgence in an abstraction, but the cost of maintaining the home office must come out of the proceeds of the contractor's several jobs, and we know of no better way to include that cost in an accounting than by a percentage apportionment. The saving represented by this apportionment is $7,324.11. We have, however, subtracted from the Government's credit in this regard the part of that overhead attributable to the overtime wages themselves, shown in Finding 40 to be $2,300.37.

■ The Government says that a credit should be given for an assumed reduction in the overhead of subcontractors, due to accelerated completion. The plaintiff has claimed, and we have awarded, only the actual increase in the wages paid by subcontractors because of Saturday work. It is probable that, in their contracts with the plaintiff, the subcontractors added some 10% to those wages to cover insurance, payroll taxes, etc. This the plaintiff paid, but will not recover here. In the circumstances we think the Government is not entitled to a credit on this account.

The plaintiff may have a judgment for $25,457.46.

It is so ordered.

JONES, Chief Judge, and HOWELL, WHITAKER, and LITTLETON, Judges, concur.