MaddeN, Judge,
delivered the opinion of the court:
The plaintiffs in these three cases are members of a partnership which has been engaged in the construction and contracting business for some thirty-seven years. They made three separate contracts with the Government, through its Federal Public Housing Authority, to build three war housing projects. Each of the three contracts is the basis for one of the instant suits.
Each contract was awarded after competitive bidding which the Government had invited. Its invitations to the plaintiffs and others had included instructions to bidders, the specifications for the proposed project, and the form of the proposed contract. Paragraph 13 of the instructions to bidders contained the following language:
The attention of the contractor is directed to * * * Executive Order 9301 (8 Fed. Beg. 1825) and to the regulations and directives, if any, issued under such *327 Executive Order by tbe War Manpower Commission or the Chairman thereof.
Article 11, paragraph (d) of the Form of Contract included in the invitation contained the following language:
* * * This contract is subject to Executive Order 9301, Establishing a Minimum Wartime Workweek of Forty-eight Hours, and to the regulations and directives, if any, issued under such Executive Order by the War Manpower Commission or the Chairman thereof.
Executive Order 9301, quoted in our Finding 7, provided in effect that an employer would not be regarded as making the most effective utilization of his manpower if he worked his employees less than forty-eight hours per week. The order expressly provided, however, that statutes and labor agreements providing for premium pay of time and one-half for work in excess of a specified workweek should not be affected by the order. The plaintiffs learned of Executive Order 9301 shortly after it was issued on February 9, 1943. As we have seen, they were also expressly advised of it in the Government’s invitation for bids.
The contract involved in No. 47866 related to the Hebble Homes project at Fairfield, Ohio, which was in the Dayton area. The invitation for bids was issued March 1, 1943. The plaintiffs submitted their bid on March 18. The contract was awarded to them and was dated March 30. On that day they were instructed to proceed immediately with the work.
The contract involved in No. 47867 related to the Ardella Homes project at Akron, Ohio. The invitation for bids was issued March 9, 1943; the plaintiffs entered their bid on March 19; the contract was awarded to them and was dated March 30, and on April 2 they were instructed to begin the work on April 5.
The contract involved in No. 47868 related to the SouthEast Homes project at Akron, Ohio. The invitation for bids was dated March 29,1943; the plaintiffs entered their bid on April 8; the contract was awarded to them and was dated April 19, and on April 28 they were instructed to begin the work on May 1.
*328 When Joseph H. Beuttas, the partner who acted for the plaintiffs in executing the contracts, went to the Regional Office of the Federal Public Housing Authority in Cleveland, Ohio, on March 30,1943, to sign the formal contracts for the Hebble Homes and the Ardella Homes projects, he raised a question as to the inclusion of the reference to Executive Order No. 9301 in the contract. It would seem that he had no basis for objection, since the proposed contract for which he and his competitors, if any, had bid, expressly provided that the contract should be subject to it. But, regardless of the full notice which he had, he had computed his bid on these two projects on the basis of a 40-hour week, and had included no item for possible Saturday overtime. A discussion ensued between him and the agent of the Government who was presenting the contracts to him for signature but who was not a contracting officer.
On March 15, 1943, the Washington office of the Federal Public Housing Authority had notified its Regional Offices that thereafter no express mention of Executive Order No. 9301 should be made in contracts for housing; that the order had the force of law which contractors should be deemed to have knowledge of without express mention. The Government’s agent, after consultation with superiors, told Mr. Beuttas that it did not make any difference whether Executive Order 9301 was mentioned in the contract or not since it had the force of law; that it did not make any difference anyway because Akron was not in the War Manpower shortage area. By the last statement he meant, as the parties understood, that the War Manpower authorities had not yet, at that time, issued the necessary local orders requiring employers in the Akron area to put the forty-eight hour week into effect. He thereupon caused to be added to the contract an addendum stating that references in the contract to Executive Order 9301 were deleted.
The plaintiffs urge that the deletion by the Government’s agent of a provision of the contract burdensome to the plaintiffs, at the plaintiffs’ request, shows that it was the intention of the parties to modify the contract by relieving the plaintiffs of the obligation which would have been, imposed by the deleted provision. Assuming that the deleted provision was *329 a contractual obligation and nothing more, and that the person who made the deletion had the authority from his principal to modify the contract, the deletion would normally have the effect which the plaintiffs urge. In the instant case there are, however, several other circumstances which must be considered.
The plaintiffs had no right to ask for the deletion of the provision in question. They had bid for a contract which contained it and had agreed to execute a contract containing it if such a contract was tendered them. There was, therefore, no equity in their request for a modification of the contract, and it would seem that no one except the contracting officer or someone with similar authority could so, without consideration, modify the contract to their advantage. But it is perhaps more important that in the instant case there was no intention on the part of the Government’s agent to modify the contract to the plaintiffs’ advantage, and the plaintiffs’ agent was aware that there was no such intention. He was told that the deletion would have no effect because the Executive Order had the force of law. The Government’s agent was willing to make the deletion because he had been instructed to omit the express mention of the Executive Order in contracts to be written in the future, and hence saw no reason for keeping it in this one, when Mr. Beuttas was urging that it be omitted. Mr. Beuttas was not aware of the instruction, and might well have been misled by the deletion if it had not been made plain to him that the change would not relieve the plaintiffs from complying with the order. But it was made plain, and Mr. Beuttas was not misled. He may have had some indefinite idea that somehow the plaintiffs would be better off .if the express mention of the order was left out of the contract. That he never thought that the plaintiffs were excused from complying with the order, or were promised reimbursement for the cost of doing so is shown by the fact that when he went to the same Government agent some weeks later to sign the contract for the third project, he speculated and expressed anxiety as to the effect of Executive Order 9301 upon the two earlier contracts. The express mention of the Executive Order in the third contract was deleted, without discussion. In making *330 up their bid for this contract the plaintiffs had included an estimate for overtime which proved to be very close to the amount which was actually spent for that purpose.
We conclude that the deletion of the express reference to Executive Order 9301 in the three contracts was not intended to have, and did not have, any effect upon the rights of the parties under the contracts.-. We next consider whether subsequent events created rights in the plaintiffs to reimbursement for the costs of complying with the Executive Order.
Although, as shown in Finding 8, General Order No. 5 of the War Manpower Commission purported to put the forty-eight hour week into effect in the Dayton and Akron areas on March 3, 1943, the plaintiffs were not ordered to work the longer week until May 12. After that Mr. Beuttas had several discussions with the Government’s agent about Executive Order 9301, and on one of those occasions Mr. Beuttas was given a Manual of Policy and Procedure Instructions to Regional Offices, and was told that it explained the procedure to be followed in filing a claim for reimbursement. Pertinent provisions of this manual are quoted in Finding 18. The plaintiffs urge that the giving to the plaintiff of the manual amounted, in the circumstances, to a promise to reimburse them if they satisfied certain conditions recited in it. They urge that, in this regard, their situation is similar to those involved in the cases of C. B. Ross, Inc. v. United States, 109 C. Cls. 690; E. and F. Construction Co. v. United States, 116 C. Cls. 512; and John A. Johnson Contracting Corp. v. United States, 119 C. Cls. 707. In each of those cases this court rendered a judgment for the contractor, holding that he had’ been promised reimbursement if he satisfied certain conditions which he had, it was found, satisfied.
In the first two of the three cases cited, the contract in question had been made before Executive Order 9301 was issued. In the third case, the contract had been negotiated and agreed upon, but not signed, when the order was issued, and the contractor refused to sign it until he was assured that the Government Agency assumed that he would be reimbursed for the costs of complying with the order. In each *331 case, then, the plaintiff had the strong equity of being saddled with an expense which he had not expected, nor had reason to expect. In each it was found that an agent of the Government who had the power to do so, promised the contractor that if he fulfilled certain conditions he would be reimbursed for the costs of complying with the Executive Order.
Promises of reimbursement, such as were found in the three cases cited, would have to be justified as bilateral modifications of the terms of the contract, or as allowances, without consideration, under the terms of the First War Powers Act to promote the national interest and facilitate the prosecution of the war. In either case; someone having proper authority, on the.Government’s side, would have to agree to the modification, or grant the allowance. In the instant case, no one, on behalf of the Government, even disregarding the question of authority, promised the plaintiffs that they would be reimbursed either on a contractual basis or on a gratuitous basis under the First War Powers Act. The handing to Mr. Beuttas, by a subordinate official, of the manual of instructions to Government agents as to how to process claims for reimbursement did no't constitute anything resembling a promise that the contract would be modified, or that the extraordinary power conferred on certain officials pursuant to the First War Powers Act would be exercised in the plaintiffs’ favor.
In No. 47867, relating to the Ardella Homes project, the plaintiffs, in addition to their claim relating to Executive Order 9301, also urge a claim for the alleged excess cost of lumber to which' cost they were, they say, subjected because the Government did not provide them with the necessary “priorities.” The Government made an error in calculation in making up its list of critical materials for which priorities were to be issued on this project. It did not include enough of certain kinds of lumber, The error was later corrected and the necessary priorities were issued but the plantiffs claim that the lumber cost them some $6,000 more than it would have cost if they had had the priorities earlier. But the plaintiffs have failed to prove that they could have bought the lumber cheaper if they-had had the priorities earlier. *332 Because of this failure of proof of damages, it becomes unnecessary to consider the other questions involved in the lumber claim.
The plaintiffs’ petition in each of the three cases will be dismissed.
It is so ordered.
Howell, Judge; Whitaker, Judge; Littleton, Judge; and Jones, Chief Judge, concur.