## Petition of TAFFEL.
### No. 331833.

District Court, S. D. New York.
May 28, 1941.

Irving Schneider, of New York City, for petitioner.

G. B. Wiggins, of New York City, for the Department of Immigration and Naturalization.

HULBERT, District Judge.

The petitioner Rose Taffel, applied for naturalization as a citizen of the United States under the provision of the Act of September 22, 1922 (Title 8 U.S.C.A. § 368) as the wife of an American citizen.

Objection thereto was made by the District Director of Immigration and Naturalization Service, on the ground:

(a) That petitioner is not the wife of an American citizen, and

(b) That petitioner is not a person of good moral character since she is living under the status of a wife with a man to whom she is not lawfully married.

Petitioner's "husband" was previously married to one Clara Weinberg Taffel in New York City on January 14, 1919, and 14 years later, viz; January 4, 1933, he filed a petition for divorce against Clara Weinberg Taffel in the Second Judicial District Court, State of Morelos, United States of Mexico, on the ground of "incompatibility of temper". Clara Weinberg Taffel filed an answer in said action on January 7, 1933, admitting the allegations of the complaint. Both parties appeared by attorneys. Neither had ever resided in Mexico, and the final decree of divorce was entered in said action on January 17, 1933.

On December 7, 1933, at Jersey City, New Jersey, petitioner and her "husband" went through a marriage ceremony, and it is upon the basis of this "marriage" that petitioner claims to be the wife of an American citizen and seeks naturalization as such. Thus the question presented is whether the Mexico decree of divorce obtained by petitioner's "husband" on January 17, 1933, was a valid decree, conferring upon the plaintiff in that action the legal capacity to contract a valid remarriage with petitioner.

■ The presumption of validity of a judgment may be overcome and the judgment attacked collaterally on the ground of lack of jurisdiction. Olmsted v. Olmsted, 216 U.S. 386, 30 S.Ct. 292, 54 L.Ed. 530, 25 L.R.A.,N.S., 1292, affirmed 190 N.Y. 458, 466, 83 N.E. 569, 123 Am.St.Rep. 585.

■ The mere recital of jurisdiction in a judgment or decree is not conclusive and may be contradicted by the actual fact. Thompson v. Whitman, 85 U.S. 457, 469, 21 L.Ed. 897. Hence the instant "mail order" divorce decree may be thoroughly scrutinized and an inquiry designed to determine as to whether the Mexican court had jurisdiction over the marital status of the parties involved.

The petitioner's "husband" and his first wife were married in New York City; they retained New York attorneys to represent them respectively, in the Mexican divorce action; the husband is now a resident of New York and in business here, and, of course, the petitioner is a resident of New York. If, however, the residence of the petitioner and her "husband" was in New Jersey at the time the "marriage" took place there on December 7, 1933, it would not change the situation. None of the parties "ever resided in Mexico" so that there can be no question whatsoever that the matrimonial domicile was initiated and remained in New York.

■ The basic principle underlying the dissolution of the marital status is that the marriage relationship is so interwoven with public policy that "the consent of the parties is impotent to dissolve it contrary to the law of the domicil." Andrews v. Andrews, 188 U.S. 14, 41, 23 S.Ct. 237, 244, 47 L.Ed. 366.

■ In New York the law of domicile expressly provides that a husband and wife cannot contract to dissolve the marriage relationship (Domestic Relations Law, Section 51), which is precisely what the parties attempted to do in the Mexican divorce action by procuring a consent divorce without ever relinquishing their matrimonial domicile here. Though the Mexican court may have had jurisdiction over the persons by virtue of their voluntary appearance by attorneys, the court obviously lacked jurisdiction over the subject matter, the matrimonial status, and thus completely lacked juridical power to dissolve that status. Haddock v. Haddock, 201 U.S. 562, 26 S.Ct. 525, 50 L.Ed. 867, 5 Ann.Cas. 1.

While the marital status of the parties resident in the State of New York is a matter of exclusively domestic concern and its courts are not required to recognize the judgment of a foreign country as having effect upon that status, if the parties were residents of New Jersey at the time of the Mexican divorce decree was procured, it would still be null and void.

The Divorce Act of New Jersey, § 33, 2 Comp.St. 1910, p. 2041, N.J.S.A. 2:50–35, provides: "Nothing herein contained shall be construed to limit the power of any court to give such effect to a decree of annulment or divorce by a court in a foreign country as may be justified by the rules of international comity; provided, that if any inhabitant of this state shall go into another state, territory or country, in order to obtain a decree of divorce for a cause which occurred while the parties resided in this state, or for a cause which is not ground for divorce under the laws of this state, a decree so obtained shall be of no force or effect in this state."

"Incompatibility of temper" is not a ground for divorce in New Jersey, and the case of Reik v. Reik, 112 N.J. Eq. 234, 163 A. 907, held that a divorce granted in a foreign country, the petitioner not having a domicile therein, was invalid.

■ The New York courts have consistently held that such divorce decrees are coram non judice, and of no legal effect in the absence of a bona fide residence and matrimonial domicile. Atherton v. Atherton, 155 N.Y. 129, 49 N.E. 933, 40 L.R.A. 291, 63 Am.St.Rep. 650; Id., 181 U.S. 155, 21 S.Ct. 544, 45 L.Ed. 794; Hubbard v. Hubbard, 228 N.Y. 81, 126 N.E. 508; Krause v. Krause, 282 N.Y. 355, 357, 26 N.E.2d 290.

Specifically, Mexican "mail order" divorce decrees have been held null and void by the New York courts. Matter of Alzmann v. Maher, 2d Dept., 231 App. Div. 139, 140, 246 N.Y.S. 60; May v. May, 4th Dept., 251 A.D. 63, 295 N.Y.S. 599; Lodding v. Lodding, Oct. 18, 1937 (Hammer, J.);[1] Powers v. Powers, Oct. 26, 1936 (Shientag, J.);[1] Solomon v. Solomon, Apr. 15, 1938, (Frankenthaler, J.).[1]

■ There have been certain cases where the New York courts, while conceding the invalidity of the Mexican or foreign divorce decree, have nevertheless held, that by invoking the jurisdiction of the foreign court the *parties* could not be heard to attack the decree of that court. Weber v. Weber, 135 Misc. 717, 238 N.Y.S. 333; Krause v. Krause, supra.

These cases do not establish the validity of the foreign divorce decree, but merely hold that the parties, in a contest between themselves, are, by their prior conduct, estopped to challenge the validity of the decree, and the Federal Government, or the State, not being a party to the collusive arrangement of the litigants is not estopped to assert the invalidity of the divorce decree.

■ Clearly, the Mexican "mail order" divorce decree in the instant case is null and void because of lack of jurisdiction in the Mexican court over the marital res; the decree of that court was ineffective to dissolve the marriage relationship, and the petitioner's "husband" was without capacity to contract a valid marriage with the petitioner, who, therefore, is not the wife of an American citizen and cannot claim the right to naturalization as such.

I do not pass upon the second objection to the petition,—that the petitioner is not a person of good moral character, in that she is living with a man not lawfully her husband. She may be merely an innocent bystander who contracted "marriage" with her "husband" with the bona fide conviction that he was legally divorced and that her "marriage" to him was a valid one. There is no necessity to prejudge any subsequent application the petitioner may choose to make. See In re Spiegel, S.D.N.Y, 24 F.2d 605; Petition of Horowitz, N.D.N.Y., 48 F.2d 652.

The disposition of this application merely denies to the petitioner her naturalization as the wife of an American citizen, with the benefits of abbreviated requirements as such. If, and when a petition as an ordinary alien based upon the usual residence requirements be filed, it is possible that the Director of Immigration and Naturalization may see fit to again raise the good moral character issue. That will be a matter for determination at that time.

Submit order in accordance with this opinion.