In re V–I–D, Inc.
Bankr. No. 2850.

United States District Court
N. D. Indiana, Hammond Division.

Oct. 19, 1951.

As Amended Oct. 30, 1951.

Goldberg, Devoe & Brussell, Chicago, Ill., John W. Lyddick, Gary, Ind., Peter L. Evans.

John W. Lyddick, Gary, Ind., Charles J. Kramer.

Jay E. Darlington, Hammond, Ind., Kelley, Glover and Vale, Inc.

Alfred P. Draper, Gary, Ind., Trustee, McM. Coffing.

SWYGERT, District Judge.

Kelley, Glover & Vale, Inc., as trustee under one of the mortgages on the debtor's property, has filed objections to the allowance of all claims based upon a certain trust indenture, under which Peter L. Evans is the successor trustee, and also more specifically to the claim of Charles J. Kramer and his wife on bonds held by them and secured by this trust indenture. The determination of these questions requires a rather extensive consideration of the facts involved.

On December 30, 1927, Charles Baran was the fee owner of the following real estate: Lots Nineteen (19) and Twenty (20) in Block Thirteen (13) in Broadway Addition to Gary, Lake County, Indiana.

On that day, he and Rosie Baran, his wife, mortgaged this property to the Home Bank and Trust Company, a corporation, and Lawrence H. Prybylski, as Trustees. This mortgage was recorded January 17, 1928, in Mortgage Record 309 at page 453 of the records of the Recorder of Lake County, Indiana. Foreclosure proceedings were instituted on December 15, 1930, to foreclose this mortgage in the Lake Superior Court, Gary, Indiana, under cause number 23163. This foreclosure proceeding is still pending in that court.

On June 20, 1928, Baran and his wife conveyed this real estate to Marcello Gerometta, who, with his wife, Maria E. Gerometta, on that date executed a mortgage to claimant Kelley, Glover & Vale, Inc., Trustee. This mortgage was recorded on June 25, 1928, in Mortgage Record 327 at page 325 of the records of the Recorder of Lake County, Indiana.

On March 11, 1932, one Don Hoover became the owner of the fee of said real estate by virtue of a quit claim deed from Samuel Kijowski and Nellie Kijowski, his wife.

On August 7, 1934, the U.S.A. Co. filed a complaint to foreclose a certain · special assessment lien on the property involved pursuant to Ind.Stat.Ann. §§ 48–2711, 48–3303, Burns' 1933, in the Lake Superior Court, Gary, Indiana, under cause number 33635. The Home Bank & Trust Company

and Lawrence H. Prybylski, as Trustees, and Kelley, Glover & Vale Realty Company, a corporation, were among the defendants named in this action. Notice of the filing of this cause was given the Home Bank & Trust Company and Lawrence H. Prybylski as Trustees by publication and summons was issued and served on Kelley, Glover & Vale Realty Company. A default judgment was rendered against the defendants in the cause and the property was ordered sold. The U.S.A. Company bought the property at the sheriff's sale and the sheriff's certificate of sale was issued to it on April 15, 1935. Within the year after that date this certificate of sale was purchased by Marguerite S. Glover, and on October 27, 1936, she surrendered the certificate and received a sheriff's deed.

On February 25, 1937, the Home Bank and Trust Company and Lawrence H. Prybylski, as Trustees, filed their verified petition pursuant to Ind.Stat.Ann. §§ 2-2601-2, Burns' 1933, for relief under those statutory provisions as nonresident defendants who had been served with notice by publication only, asking that the judgment be opened and they be allowed to defend and tendering their answer to the complaint. Notice of this petition was served on the U.S.A. Co., but no notice was served on Marguerite S. Glover. The U.S.A. Co. failed to appear and on March 19, 1937, the court ordered that the judgment and decree "be and the same are hereby vacated, opened up and set aside." The trustees filed their answer the same day. On April 8, 1941, the mortgage trustees tendered and paid into the clerk the sum of $520, the amount claimed under the special assessment lien, together with the costs of the action.

On February 23, 1939, the said Don Hoover executed a quit claim deed, describing this real estate, to V-I-D., Inc., a corporation. This deed was recorded on April 13, 1943, in the Recorder's office of Lake County, Indiana. On June 24, 1939, V-I-D., Inc. filed in this court a petition for reorganization under the Bankruptcy Act. On December 1, 1939, Marguerite S. Glover filed her intervening petition in this proceeding requesting that she be ad-judged the fee-simple owner and be given possession of the real estate in question. Subsequently this court found that the judgment entered in cause number 33635, Lake Superior Court was void as to V-I-D., Inc. and that V-I-D., Inc. was the owner of the fee simple title to this real estate. The court's ruling was predicated upon the ground that Don Hoover, who owned the property at the time the assessment lien foreclosure judgment was rendered, was not served with summons in the action. The denial of the relief asked by Marguerite S. Glover in her intervening petition was affirmed by the Court of Appeals. In re V-I-D., Inc., Debtor, 7 Cir., 1946, 158 F.2d 964, certiorari denied Glover v. Coffing, 1947, 331 U.S. 829, 67 S.Ct. 1352, 91 L.Ed. 1844.

On April 7, 1950, Kelley, Glover & Vale, Inc., Trustee, requested and was granted leave to file its claim upon the mortgage given it by Marcello Gerometta and wife on June 29, 1928, and under a certain decree of foreclosure rendered by the Porter Circuit Court entered February 5, 1931, foreclosing this mortgage. The claim was filed August 19, 1950. On April 13, 1950, Charles J. Kramer and his wife, Helen E. Kramer, requested and were granted leave to file their claim. Their claim filed on that date asserts that they hold a preferred claim because they own bonds and interest coupons issued under the mortgage from Charles Baran and his wife to the Home Bank & Trust Company and Lawrence H. Prybylski, Trustees, of the face amount of $134,860. Some of these bonds were acquired at least as late as 1945.

On July 26, 1950, a creditor of V-I-D., Inc. filed a petition to determine the insolvency of the debtor corporation. Notice of a hearing on this petition and also on the Trustees' petition to classify creditors and stockholders was given to the creditors and stockholders. By order of court, October 27, 1950, was fixed as the last date upon which objections to the allowance of claims could be filed. On September 27, 1950, Kelley, Glover & Vale, Inc., Trustee, filed its objections to the claims filed under the mortgage executed by Baran and wife to Home Bank and

Trust Company and Lawrence H. Prybylski, as Trustees.

On November 1, 1950, Peter L. Evans was recognized by an order of court as the successor trustee of this trust indenture. A hearing was had on the objections filed by Kelley, Glover & Vale, Inc., Trustee, and evidence was submitted.

■ The evidence was to the effect that the Home Bank and Trust Company, an Illinois Corporation, was never licensed to do business in Indiana; that Lawrence H. Prybylski was a vice–president of the bank; that the bank made a number of loans on Indiana property similar to the Baran loan; and that it ceased to exist as a banking institution about 1935. Some of the mortgages were executed in Indiana and others in Chicago. The Baran mortgage was executed in Gary, Indiana. It was the practice of the bank that after the trust indentures were signed and recorded and the mortgage bonds were registered at the bank, the loans were paid out in Chicago and the bank proceeded to sell the bonds. Under these circumstances, it is concluded that the Home Bank and Trust Company was doing business in Indiana at the time of the execution of the trust indenture.

The evidence was also to the effect that, beginning about 1936, the claimants Kramer and Kramer purchased bonds issued under the Baran mortgage, many of the bonds being acquired in exchange for merchandise. Some of the bonds were purchased for as low as 15% of their face value and some as high as 35% of their face value.

On August 18, 1950, Marguerite S. Glover and William J. Glover, her husband, executed a quit claim deed describing this real estate to Kelley, Glover & Vale, Inc., Trustee.

■ Kelley, Glover & Vale, Inc., hereinafter referred to as the "objector", urges that the trust indenture involved was invalid at the time of its execution, principally on the ground that it is violative of Ind. Stat. Ann. § 56–620, Burns' 1933, which prohibits the appointment of nonresident trustees. Without touching on the problem of how this defect could impair the validity of the lien, it is a sufficient answer to this contention that this statute has been repeatedly recognized as unconstitutional by the courts of Indiana. Kist et al. v. Coughlin et al., Ind.App., 1943, 50 N.E.2d 939, transferred 1944, 222 Ind. 639, 57 N.E.2d 199; Johnston v. State et al., 1937, 212 Ind. 375, 8 N.E.2d 590; Robey v. Smith et al., 1892, 131. Ind. 342, 30 N.E. 1093, 15 L.R.A. 792. See Farmers' Loan & Trust Co. v. Chi. & A. Ry. Co. et al., C.C.Ind. 1886, 27 F. 146.

■ The related assertion of the objector that the trust indenture was invalid because at the time of its execution one of the original co-trustees, the Home Bank and Trust Company, a non-resident corporation, had not qualified to do business in the State of Indiana is likewise without merit. The applicable statute in force at that time, Ind.Stat.Ann. § 4918, Burns' 1926, provided, as does the present provision, Ind.Stat.Ann. § 18–2328(b), Burns' 1933, that such a corporation cannot sue "* * * upon any claim, legal or equitable, whether arising out of contract or tort, in any court in this state". It has been held, however, that this statute does not void such transactions, its sole effect is to make unavailable the courts of the state to a non-complying corporation. Peter & Burghard Stone Co. v. Carper, 1930, 96 Ind.App. 554, 172 N.E. 319, 352; see Annotation, 133 A.L.R. 1171. Moreover, as the court there noted, there seems to be no reason why this statute would close the federal courts of this state to such a corporation, for all the relevance that question may have here.

■ The objector also contends, however, that if the trust indenture were valid in its inception, the security of its lien was nonetheless lost through the foreclosure of the special assessment lien on the property involved, and has advanced various grounds for the invalidity of the proceedings instituted February 25, 1937, by the trustees under the trust indenture to open up this foreclosure decree. But even if, as the objector asserts, the opening up proceedings were ineffective to disturb the

original decree of foreclosure, the objector's position cannot be sustained.

The objector contends that although the decree and the sale had thereunder were void as to the fee owner and thus could not affect the title to the property in any way, the proceedings were nonetheless sufficient to terminate the equity of redemption and consequently the lien created by the trust indenture, on the theory that a judgment binds all those who are parties to it. This reasoning misconstrues the nature of the foreclosure of a senior lien as it affects junior lienholders. The junior lienholder does not have an interest in the property as such which is intended to be conveyed by the foreclosure and sale, as does the owner of the fee. He has a security interest which attaches to whatever interest in the property remains in the mortgagor or his grantee after the satisfaction of the senior lien, and he is therefore given a right to redeem from the senior lien to protect that security. Thus the purpose of joining junior lienholders in the foreclosure of a senior lien is not to discharge the property from junior liens for the benefit of the fee owner, but to terminate this right to redeem for the benefit of the senior lienholder and his purchaser. But where, as here, the purchaser has acquired nothing but an assignment to himself of his own interest as senior lienholder, Curtis et al. v. Gooding, 1884, 99 Ind. 45, how can the junior lien be said to be discharged? Even if it is assumed that the foreclosure decree operates to prevent the junior mortgagee's redemption from the senior lien, there yet appears to be no reason why the junior lien would not still attach to whatever interest remains in the owner of the fee, in view of the fact that redemption from the senior lien is not the sole course open to the junior lienholder in the enforcement of his security. See Catterlin et al. v. Armstrong, 1885, 101 Ind. 258, 263.

Aside from this reasoning, moreover, the junior lienholder has a statutory right of redemption which extends to one year from the date of sale, Ind.Stat.Ann. § 48–2711, Burns' 1933, and since a valid sale has never occurred, presumably this right was still open to him at the time of the tender of the redemption money into court in 1941:

It is therefore concluded that Peter L. Evans, as successor trustee under the trust indenture recorded January 17, 1928, is the holder of a claim on the debtor's estate superior to that of Kelley, Glover & Vale, Inc., Trustee, arising out of the mortgage of June 20, 1928.

The objector has also requested the court to disallow the claim of C. J. Kramer and his wife, or to limit it to the consideration actually paid by them for the bonds they hold, on the ground that the claims were acquired inequitably, and on the further ground that a certain proportion of them were acquired subsequent to the institution of these proceedings and subsequent to C. J. Kramer's intervention. The court has power to limit such claims to the consideration actually paid, but only if the claimants stood in a fiduciary relationship to the estate or its beneficiaries. In re Lorraine Castle Apts. Bldg. Corp., 7 Cir., 1945, 149 F.2d 55, certiorari denied, 1945, 326 U.S. 728, 66 S.Ct. 35, 90 L.Ed. 432, and there is nothing in the record sufficient to indicate that that has been the case. True, in his petition to intervene filed February 16, 1943, C. J. Kramer expressed as one of his purposes in intervening a desire to assist the estate and its bondholders in bringing these proceedings to a successful conclusion, but there is absent from the record any intimation that in doing so the claimant Kramer accepted the burden of a fiduciary status with regard to the estate or his fellow bondholders, nor has he made any claim for services rendered to either during the course of this reorganization. The objector has failed to introduce any evidence that the claimants have conducted themselves as anything other than substantially interested bondholders seeking to protect their own interests.

This memorandum shall be deemed to constitute the court's special findings of fact and conclusions of law.

Trustee's counsel shall prepare a form of order in accordance with the determinations reached in the foregoing memorandum and submit it to the court upon five days' notice to other counsel.