**VOLENTINE AND LITTLETON, Contractors, a Partnership, Composed of M. O. Volentine and Earl Littleton**
v.
**UNITED STATES.**
No. 62–54.

United States Court of Claims.
Jan. 14, 1959.

264

See also 136 Ct.Cl. 638, 145 F.Supp. 952.

Ras Priest, Newport, Ark., for plaintiff.

William A. Stern, II, Washington, D. C., Asst. Atty. Gen., George Cochran Doub, for defendant. Norman Hyman, Washington, D. C., on the brief.

MADDEN, Judge.

The plaintiff made a contract, dated February 18, 1950, to clear the trees, brush and debris from a large area of land within the reservoir area of Whitney Dam on the Brazos River in Texas. At the time the plaintiff's contract was made, Whitney Dam was under construction, but the river and its tributary creeks were still flowing naturally. The plaintiff's work was, under the terms of the contract, to be completed by June 29, 1950.

The plaintiff's bid was imprudently low. It was $79,600. The Government's estimate of what the work should cost, without profit, had been $222,884. Of the 18 bids submitted, all but four were larger than the Government's estimate. Recognizing that the work could not be done at the plaintiff's bid price, the Government offered to let the plaintiff withdraw its bid, but the plaintiff decided to let it stand, and took the contract at its bid price.

The plaintiff's performance was slower than would have been required to complete the contract on time, but a report from the office of the Government's resident engineer stated that on May 27 the work was only approximately 15 days behind schedule.

As a step in the construction of the main dam by the dam contractor, a cofferdam was built to divert the river through sluiceways in the completed portion of the dam so that the missing section of the dam through which the river had been flowing could be constructed. On May 20, 1950, with less than 24 hours' notice to the plaintiff, the cofferdam was closed and the level of the water at the dam was raised about 20 feet. The land to be cleared by the plaintiff extended from the dam up the river about eleven miles. Because of the fall of the river,

the rise caused at the upper end of the clearing area was only about one foot.

The rise in the water level caused great difficulties for the plaintiff. Trees which had been felled but not yet pushed together by bulldozers and burned had to be pulled out of the wet area with cables operated with winches on more powerful bulldozers. The plaintiff did not have that type of equipment, and had to buy or rent it. The process was slower and required more men than did the process of pushing trees together with lighter equipment.

■ We have found that, but for the difficulties created by the unanticipated closing of the cofferdam, the plaintiff would have had its work substantially completed by July 13. The plaintiff's costs incurred after July 13 and before completion and acceptance of its work on November 29, were $92,952.36. The plaintiff urges that it is entitled to a judgment for that amount.

The Government's conduct in permitting the flooding of the area of the plaintiff's work with no adequate warning to the plaintiff was completely inconsiderate of the interests of the plaintiff. Its explanation lies, no doubt, in the fact that the dam contract involved infinitely larger sums and interests than did the plaintiff's contract. But if the flooding of the plaintiff's work was necessary in order to avoid delaying the dam contractor's more expensive work, with possible liability of the Government for the delay, the plaintiff ought not to have to suffer the cost of this advantage to the Government.

■■ The inconsiderate conduct was a breach of that term which every contract contains, by fair implication, that one party to a contract will not impede performance by the other party. If, within the terms of the contract, the contracting officer had the power to make an equitable adjustment to pay the damages caused by the breach, the officer should have made a fairly equitable adjustment. If, because it was a situation involving unliquidated damages, the contracting officer did not have authority

to give relief, his decision and that of the reviewing board had no finality. We will not construe a contract as giving an administrative officer authority to decide a case against a claimant, but no power to decide it in his favor.

There is not much to be said for the plaintiff's method of proving its damages. The fact that it spent $92,952.36 after July 13, the date on which, but for the flooding, it could have completed the contract, does not prove much. *Post hoc ergo propter hoc* is neither good logic nor good law.

■ Both the cost of the work in its latter stages and the length of time consumed are difficult to understand. There was not a great deal of work close to the streams left to be done when the cofferdam was closed. What there was to be done was made very difficult and expensive, but it does not come near to accounting for what the plaintiff did expend. It may be that the work was somewhat demoralized by the newly created difficulties, and was allowed to drag along inefficiently. In view of the condition of the evidence, we can only estimate the recoverable damages, and we find them to be $40,000.

The contracting officer, by change order, increased the contract price by $6,054, as compensation for what he described as additional work directed to be performed at certain low points in the reservoir area. It is not clear whether this sum has been paid. If it has been, it should be deducted from the figure of $40,000 named above, and the judgment should include only the remainder after the deduction.

There was deducted $7,650 from the contract price for liquidated damages for 153 days' lateness in completion, at $50 per day. The change order mentioned above extended the plaintiff's time by 34 days and thus eliminated $1,700 from this charge. We do not know whether the plaintiff received the $1,700. If not, it should be added to the amount arrived at as directed above. We conclude, further, that the plaintiff's time should have been extended 45 days more, a total of

79 days. The sum of $2,250 will be included in the judgment on that account.

The plaintiff is entitled to recover and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38(c), 28 U.S. C.A.

It is so ordered.

REED, Justice (Retired), sitting by designation, JONES, Chief Judge, and LARAMORE and WHITAKER, Judges, concur.