**UTAH CONSTRUCTION AND MINING COMPANY**

v.

**The UNITED STATES.**

No. 3-61.

United States Court of Claims.

Dec. 11, 1964.

Rehearing Denied March 12, 1965.

Davis, J., dissented in part.

Gardiner Johnson, San Francisco, Cal., for plaintiff. Thomas E. Stanton, Jr., San Francisco, Cal., and Charles J. Heyler, of counsel.

Irving Jaffe, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant. James F. Merow, Washington, D. C., was on the briefs.

Before COWEN, Chief Judge, DURFEE, DAVIS, and COLLINS, Judges, and WHITAKER, Senior Judge.

WHITAKER, Senior Judge.

Plaintiff had a contract with the Atomic Energy Commission for the construction of an assembly and maintenance area at the National Reactor Testing Station in Jefferson and Butte Counties, Idaho. The contract was fully performed on January 7, 1955, several extensions of time having been granted on account of delays for which the contractor was not responsible. During the performance of the contract and after its completion, plaintiff made various claims for increased costs and for damages, some of which were claims arising under the contract and some for alleged breaches of contract by the defendant on account of delays and other causes.

The case was referred to Trial Commissioner C. Murray Bernhardt for the taking of testimony and for a report. On February 18, 1964, the commissioner issued an order defining the scope of the testimony to be taken with reference to the several claims, in the light of the Supreme Court's opinion in United States v. Carlo Bianchi & Co., 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963). The defendant now asks us to review this order.

Prior to United States v. Wunderlich, 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113 (1951), this court had held that in determining whether or not the action of the contracting officer or the head of the department was arbitrary or capricious or unsupported by substantial evidence or otherwise contrary to law, it was not confined to the evidence before the Board of Contract Appeals (which in most cases was the representative of the head of the department), but was entitled to receive evidence de novo. However, the Supreme Court in United States v. Wunderlich, supra, held that we were bound by the action of the contracting officer on claims arising under the contract unless his action was fraudulent; that is to say, unless it amounted to conscious wrongdoing. Following this decision, the Congress enacted what is known as the Wunderlich Act, being the Act of May 11, 1954, 68 Stat. 81. This act in substance provided that the decision of the head of a department or his duly authorized representative or board "in a dispute involving a question arising under such contract * * * shall be final and conclusive unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence."

Following the enactment of this statute, this court first held in Wagner Whirler and Derrick Corp. v. United States, 121 F.Supp. 664, 128 Ct.Cl. 382 (1954), that the Wunderlich Act was designed to restore the status quo ante the

decision of the Supreme Court in United States v. Wunderlich, supra, but we did not decide in that case whether or not *de novo* evidence was admissible to determine whether the action of the board was arbitrary, etc. However, in Volentine and Littleton v. United States, 145 F.Supp. 952, 136 Ct.Cl. 638 (1956), we explicitly held that since the purpose of Congress was to restore the *status quo ante* and since the practice prior to the Wunderlich decision had been to receive evidence *de novo*, we would continue to do so. We reiterated this position in Carlo Bianchi & Co. v. United States, 169 F.Supp. 514, 144 Ct.Cl. 500 (1959), 157 Ct.Cl. 432 (1962); but the Supreme Court reversed and held that in the determination of this question we were confined to the evidence admitted before the board. United States v. Carlo Bianchi & Co., 373 U.S. 709, 83 S.Ct. 1409 (1963).

In cases where the administrative record was defective or inadequate, the Court had this to say:

" * * * *First*, there would undoubtedly be situations in which the court would be warranted, on the basis of the administrative record, in granting judgment for the contractor without the need for further administrative action. *Second*, in situations where the court believed that the existing record did not warrant such a course, but that the departmental determination could not be sustained under the standards laid down by Congress, we see no reason why the court could not stay its own proceedings pending some further action before the agency involved. Cf. Pennsylvania R. Co. v. United States, 363 U.S. 202, 80 S.Ct. 1131, 4 L.Ed.2d 1165. Such a stay would certainly be justified where the department had failed to make adequate provision for a record that could be subjected to judicial scrutiny, for it was clearly part of the legislative purpose to achieve uniformity in this respect. And in any case in which the department failed to remedy the particular substantive or procedural defect or inadequacy, the sanction of judgment for the contractor would always be available to the court." [373 U.S. 709, 717–718, 83 S.Ct. 1409, 1415.]

■■ Where the dispute "arises under the contract" the contracting officer and the head of the department have authority to decide questions of fact and the contract makes their decision thereon final and conclusive; but where the dispute involves an alleged breach of the contract, and the contractor seeks unliquidated damages therefor, neither the contracting officer nor the head of the department has jurisdiction to decide the dispute. Miller, Inc. v. United States, 77 F.Supp. 209, 111 Ct.Cl. 252 (1948); Langevin v. United States, 100 Ct.Cl. 15 (1943); Beuttas Trading as B–W Construction Co. v. United States, 60 F.Supp. 771, 101 Ct.Cl. 748 (1944); reversed in part on other grounds, United States v. Beuttas et al., 324 U.S. 768, 65 S.Ct. 1000, 89 L.Ed. 1354 (1944). If they undertake to do so—which they rarely do—neither their decision nor the findings of fact with reference thereto have any binding effect. This necessarily follows because they are without authority to decide the dispute. It goes without saying that a decision of any court or other agency on a matter concerning which it has no jurisdiction has no binding effect whatsoever. National Steamship Co. v. Tugman, 106 U.S. 118, 122, 1 S.Ct. 58, 27 L.Ed. 87 (1882); Coyle v. Skirvin, 124 F.2d 934, 937 (10th Cir. 1942), and cases there cited. See also Petition of Taffel, 49 F.Supp. 109, 111 (S.D.N.Y.1941).

Defendant contends that since the contract gives to the contracting officer and the head of the department authority to make findings of fact concerning *all* disputes, they have authority to make findings concerning a dispute over whether the contract had been breached. This contention cannot be sustained. The contract plainly limits their authority to make such findings to "disputes concerning questions of fact *arising under this contract*." This means a dispute over the

rights of the parties given by the contract; it does not mean a dispute over a violation of the contract.

The Supreme Court's opinion in Bianchi, supra, restricting the evidence to be considered by this court to the record before the Appeals Board, is expressly limited to "matters within the scope of the disputes clause." At page 714 of 373 U.S., at page 1413 of 83 S.Ct. the Court said:

> "Respondent has not argued in this Court that the underlying controversy in the present suit is beyond the scope of the "disputes" clause in the contract or that it is not governed by the quoted language in the Wunderlich Act. Thus the sole issue, as stated supra, p. 710 [p. 1411], is whether the Court of Claims is limited to the administrative record with respect to that controversy or is free to take new evidence. * * *

> "It is our conclusion that, apart from quesions of fraud, determination of the finality to be attached to a departmental decision on a question arising under a "disputes" clause must rest solely on consideration of the record before the department. This conclusion is based both on the language of the statute and on its legislative history."

Finally, in conclusion, the Court said:

> " * * * We hold only that in its consideration of matters within the scope of the "disputes" clause in the present case, the Court of Claims is confined to review of the administrative record under the standards in the Wunderlich Act and may not receive new evidence. * * *" [373 U.S. 709, 718, 83 S.Ct. 1409, 1415.]

The opinion of the Supreme Court was thus restricted to "matters within the scope of the disputes clause." An action for breach of contract is not within the scope of this clause.

However, it may be that the contracting officer and the head of the department may find a fact relevant to the settlement of a dispute arising under the contract, which fact may also be relevant on the question of the right of the plaintiff to recover for breach of contract. What effect is to be given to such a finding?

■ Let it be noted that no statute gives the contracting officer and the head of the department, or his representative, authority to decide the rights of the parties to a Government contract; their authority is derived solely from the contract between the parties. Langevin v. United States, supra, 100 Ct.Cl. at 30.

The contract in Article 15 provides that "all disputes concerning questions of fact *arising under this contract* shall be decided by the contracting officer subject to written appeal by the contractor within 30 days to the head of the department concerned or his duly authorized representative, whose decision shall be final and conclusive upon the parties thereto." (Emphasis added.) Thus, the board's authority is limited to disputes "concerning questions of fact *arising under this contract.*" It is only such disputes which the contracting officer and the head of the department have jurisdiction to resolve and on which their findings of fact are final and conclusive. The parties did not contract that *their findings of fact should be conclusive in suits for breach of contract.* In such suits the contract does not bind a judicial tribunal to accept their findings, although they may have been relevant to a dispute "arising under the contract."

■ Had plaintiff been permitted to submit the dispute over what it was claiming to a judicial tribunal established by Congress with authority to find the facts and decide the dispute, and it had done so, plaintiff, under the doctrine of collateral estoppel, would have been bound by the tribunal's findings, both in the cause of action submitted and in a later proceeding between the same parties on a different cause of action. Commissioner v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948). The reason for this rule is to save the time of the courts and to protect a litigant from having to relitigate an issue previously

submitted to a judicial tribunal and decided by it.

But neither the contracting officer nor the head of the department, or his representative, is a judicial tribunal created by Act of Congress; they derive their authority solely from the contract between the parties, and their authority is limited by the terms of the contract. That contract authorizes them to make findings and to decide disputes "arising under the contract." It is only as to such disputes that their findings and decisions are made final and conclusive. It does not make them final and conclusive on a dispute over whether there has been a breach of the contract.

■■ When a party submits his case to a judicial tribunal, he does so in light of the rule that its findings of fact are binding on him, not only in that litigation, but in all other litigation between the same parties. But this rule does not apply where a contract requires him to submit his claim, not to a judicial tribunal, but to a person designated by the contract; in such case he does so subject only to the terms of the contract, and the effect of the findings and decision of the designated person is that set out in the contract and no more.

■ So, when a party appeals to a judicial tribunal to determine whether the other party has breached the contract, it is not bound by a finding of a person only authorized to decide disputes "arising under the contract," and it is entitled to ask the judicial tribunal to make its own findings and render its decision based on those findings. Since this is the first time that recourse has been had to a judicial tribunal, that tribunal not only may, but it is obligated, to make its own findings. Never before has the contractor "had his day in court."

For example: The contracting officer makes a change in the contract and the contractor asks for the increase in his cost as a result of the change and for an extension in time for the delay incident thereto. The contracting officer allows him a sum for the increase in cost and determines he has been delayed X days.

The contractor thinks he has been delayed more than X days, but his only recourse is an appeal to the head of the department whose decision is final because this is a dispute arising under the contract. In the absence of action which is arbitrary, etc., this is the end of the matter, so far as increased costs and extension of time are concerned, for all findings of fact of the contracting officer and head of the department in such disputes are final and conclusive.

But the contractor still thinks he has been delayed more than X days and he further thinks the delay was so unreasonable as to amount to a breach of contract, so he sues for damages for the breach. In such an action the findings of fact of the contracting officer are not final, because this is not a dispute "arising under the contract." It is only as to those disputes that the contract does make his findings final. In a suit for a breach because of an unreasonable delay, the court, in order to determine whether the delay was unreasonable and, hence, a breach of the contract, must determine the extent of the delay. In such a dispute the parties did not agree that the decisions of the contracting officer should be final and conclusive.

In any case we would so construe the contract between the parties, but in this case there is a compelling reason to strictly limit the contract to its precise terms. It is well known that anyone seeking a contract with the Government must be willing to agree to accept the contract drawn by the Government; indeed, the advertisement for bids so stipulates. These contracts all contain this "disputes" clause, which makes the arbiter of the dispute in the first instance the contracting officer, who is the Government's servant and employee, and whose prime duty is to be diligent in the protection of the Government's interests and to require that the contractor strictly comply with the terms of the contract. The transition from such a role to that of an impartial arbiter in the settlement of a dispute between himself, or his representative, and the contractor would

seem to be somewhat difficult. An appeal from the findings and decision of the contracting officer is allowed to the head of the department, but he, too, is an officer of the Government, the opposite contracting party. This is an additional and a cogent reason for limiting this provision of the contract to its precise terms. See Langevin v. United States, supra; Beuttas Trading as B–W Construction Co. v. United States, supra; and Miller, Inc. v. United States, supra.

The Atomic Energy Commission's Advisory Board of Contract Appeals in the Appeal of Utah Construction Company (Docket No. 91) recognized its lack of jurisdiction to decide or to make findings concerning damages for breach of contract. It said:

> "It is clear, in the light of the Board's decision in Appeal of Claremont Construction Company (Docket No. 64), that, not only does the Contractor's appeal on the issue of damages raise issues solely of law, but that this dispute is as to a matter 'relating to' and not one 'arising under' the contract. The Board has discussed this distinction at length in both that Claremont case and in Appeal of Frontier Drilling Company (Docket No. 74). The reasoning need not be repeated here. As to this issue, the appeal should be dismissed as not within the jurisdiction of the Board."

█ In conclusion, we hold that in a suit for breach of contract we are not bound by a finding of fact of the Board of Contract Appeals even though that finding is relevant to "a dispute arising under the contract."

With these general principles in mind, we proceed to consider the commissioner's order with respect to the several claims. The commissioner divides them into these six categories, (1) with respect to the pier drilling, (2) the concrete aggregate, (3) the shield windows, (4) the shield door, (5) the Amercoat paint, and, finally, the delay damages claim.

1. *Pier Drilling Claim.*

Plaintiff claims that in the drilling and excavation for "piers," or foundation shafts for certain buildings, it encountered subsurface conditions differing materially from those indicated in the contract documents. First, it claimed additional compensation for the extra cost of drilling the "float rock" which it had encountered and which it claimed was not shown on the contract documents. This claim was denied by the contracting officer on the ground that no changed conditions had been encountered. The Advisory Board of Contract Appeals, the representative of the head of the Atomic Energy Commission, reversed and found that the float rock did constitute a changed condition but that no additional cost had been incurred by plaintiff thereby unless it was liable therefor to its drilling subcontractor. The claim was remanded to the contracting officer to determine the amount of the increased cost of drilling.

Certain letters have been filed with the commissioner to indicate that plaintiff did not further prosecute its claim for increased cost and, hence, neither the contracting officer nor the board allowed plaintiff any sum therefor.

█ The commissioner holds plaintiff is not entitled to recover in this court therefor by reason of failure to exhaust its administrative remedy. The commissioner was correct in affirming the action of the board since this question was a dispute "arising under the contract."

█ Plaintiff also claims damages for delay by reason of the refusal of the contracting officer to modify the contract on account of the changed conditions encountered. Since this is an action for breach of contract, the parties are not bound by the decision of the board and may introduce evidence *de novo* concerning any unreasonable delay that may have been occasioned thereby.

█ In United States v. Rice, 317 U.S. 61, 63 S.Ct. 120, 87 L.Ed. 53 (1942), it was held that, where a contract was modified on account of changed conditions encountered, the contractor was en-

titled to increased costs and an extension of time, but not to damages incident to the delay. However, where the contracting officer delays unreasonably in modifying the contract, the contractor is entitled to recover damages for such part of the delay as was unreasonable. F. H. McGraw & Co. v. United States, 130 F.Supp. 394, 131 Ct.Cl. 501, 506 (1955), and cases cited. Here the contract was not modified until after completion of the work.

 It is not apparent how this could have delayed plaintiff because plaintiff has failed to show that the changed conditions increased its costs, but if it was unreasonably delayed, plaintiff is entitled to recover for breach of contract.

### 2. Concrete Aggregate Claim.

The contract allowed the contracting officer to purchase concrete aggregate from the Government's supplies and the contractor did so. Early in the performance of the contract it was discovered that the concrete did not have the required strength and that the dirty condition of the aggregate was responsible therefor. To supply the necessary strength, the contracting officer required plaintiff to add one sack of cement to each cubic yard of concrete mix during the time the Government was washing the concrete so as to bring it up to specification requirements. Plaintiff submitted to the contracting officer a claim for the extra cement used and was reimbursed therefor.

More than a year after the contract had been completed, plaintiff filed a claim for additional costs incurred because of the poor condition of the aggregate. The contracting officer was of the opinion that this additional claim of the plaintiff was one for breach of contract and, therefore, one which he had no authority to decide under the terms of the "disputes" article. He also thought the claim was untimely.

Plaintiff appealed to the head of the department. The Advisory Board of Contract Appeals dismissed the claim for failure of the plaintiff to make timely presentation of it.

 If this claim be one for breach of contract, as our commissioner supposes, we have jurisdiction to determine it and to receive evidence de novo.

 However, assuming the claim is not for breach of contract, we cannot agree with the commissioner that the failure of the board to consider the case on its merits gives plaintiff the right to introduce evidence de novo in this court. If we decide the board should have considered the claim on its merits, we should suggest to the board that it consider it on the merits and suspend proceedings here until it has had a reasonable opportunity to do so.

### 3. Shield Windows Claim.

Under the original contract defendant undertook to furnish the shield windows to be installed in the building to be constructed, but by modifications 2 and 4 thereof, plaintiff was required to negotiate a contract with the Corning Glass Works for the procurement of these shield windows, which it did.[1] The windows were supposed to comply with contract specifications and with the shop drawings and samples. Plaintiff complains that defendant unreasonably delayed in approving the shop drawings. It also says that the designated authority first approved the type II windows but that other agents of the defendant later rejected them and still later the defendant reversed its rejection and again approved them. It also alleges delay in connection with the approval of type I windows.

The plaintiff presented its claim on this item for a time extension for excusable delay and an equitable adjustment for increased costs under the Changed Conditions article of the contract. The com-

---

1. These shield windows were designed to permit observation of what was going on within the atomic reactor without subjecting the observer to radio-active radiation.

missioner states that he cannot determine from the record what part of the claim arises under the contract and what part of it is for damages for delay; but he concludes that the basic issue is whether or not the plaintiff was unreasonably delayed by acts of the Government. As to such claim he properly says that the decision of the head of the department is not final and *de novo* evidence may be introduced in this court.

Defendant's contention that the filing of the claim for delay with the contracting officer under the Changed Conditions article forecloses plaintiff from bringing suit for damages for delay cannot be sustained. The contracting officer could only grant an extension of time for delay (United States v. Rice, supra); he could not award damages for unreasonable delay.

It appears that the board over a period of 3 days heard testimony with respect to this claim, including the claim for delays, and that the transcript of this testimony runs to 453 pages, and that many exhibits were filed; hence, the commissioner suggests that the parties might well agree to stand on this record, with permission to supplement it with respect to the delay claim to such extent as they think proper. Certainly the parties ought to desist from duplicating the administrative record but, insofar as the claim relates to damages for unreasonable delay, the parties are not foreclosed by it nor from supplementing it, if they wish.

4. *Shield Door Claim.*

This claim was presented under the Changes article of the contract under which the contractor asked for extra costs by reason of a change in the drawings and specifications. The contracting officer disallowed the claim because it was not presented within 10 days as required by Article 3 of the contract.

After completion of the work, final payment was made to the contractor and a release was signed by it from which it excepted certain claims, including this shield door claim. According to defendant's answer, which is not rebutted by plaintiff, it released the Government "from all claims arising under, in connection with or by virtue of the subject contract and all modifications thereto with the exception of the shield window claim, the pier drilling claim, and the shield door claim, the concrete aggregate claim, and the sum of $5,606.39 which was withheld pending a decision in the Amercoat appeal." The claim presented to the contracting officer with respect to the shield door did not advance any claim for increased costs on account of delays. If the release signed by plaintiff reads as set out in the Government's answer, it must be said that the Government was thereby released from all claims not specifically excepted, whether arising under the contract or in breach of the contract. United States v. William Cramp & Sons Ship & Engine Bldg. Co., 206 U.S. 118, 27 S.Ct. 676, 51 L.Ed. 983 (1907); Watts Construction Co. v. United States, Ct.Cl. No. 351–61, decided May 10, 1963. The exception of "the shield door claim" must have referred to the claim presented to the contracting officer. As stated, that claim did not refer to damages for delay. Hence, the commissioner is correct in saying that any evidence with reference to damages for delay on account of the shield door is inadmissible, because foreclosed by the release.

As to the claim made for extra work on account of changes made in the shop drawings, this is a claim "arising under the contract" and was within the authority of the contracting officer to determine. The contracting officer disallowed the claim because it was not presented within 10 days as required by Article 3 of the contract. The board held that a part of plaintiff's claim for extra costs must be disallowed because it did not constitute changes under the Changes article, and as to that part which did constitute changes the board held that it was barred by the failure of the plaintiff to present its claim within the 10-day period. These decisions, both of the contracting officer and of the

board, were within their province. There is no allegation of arbitrary and capricious action and, hence, we have no jurisdiction to review the action of the board. It is, therefore, immaterial for the purposes of this motion that no record was made of the board's proceedings.

### 5. *The Amercoat Paint Claim.*

In the release signed by the plaintiff, according to the defendant's answer, it "excepted therefrom the sum of $5,606.-39 which was withheld pending a decision in the Amercoat appeal." This sum was subsequently paid plaintiff and, therefore, defendant has been relieved from all liability with respect to this Amercoat paint claim.

The commissioner's order of February 18, 1964, is amended accordingly.

Defendant's motion for partial summary judgment may be filed, but the same is overruled with leave to renew as to any matters contained therein not ruled upon in this opinion.

COWEN, Chief Judge (concurring in the result).

I concur with the majority and Judge Davis in rejecting the Government's sweeping contention that *de novo* evidence is inappropriate with respect to any factual question connected with the contract, regardless of the nature of the contractor's claim or the authority of the agency board or head of the department to decide the dispute to which such factual questions are related. For the reasons stated in both opinions, defendant's position, that the Disputes clause requires the administrative agency to make binding factual determinations on every question relating to the contract, is untenable.

It should be emphasized that we have before us only the review of a commissioner's order. Considering the stage in the trial at which the order was issued, the nature of the record before us, and the briefs of the parties, I do not believe that this case in its present posture presents the proper vehicle for laying down hard and fast rules to resolve all of the important issues urged upon us by the parties. As I understand, the major issue, which separates the views of the majority from those of Judge Davis, is the extent to which a finding made by an agency board on a claim for relief that can be granted under the terms of the contract will be binding in a subsequent court action for relief of the type which is not available under the terms of the contract, when the same factual question is again presented. I would reserve my decision until the facts and questions of law are adequately presented to the court at a stage in the proceedings where it can properly decide the matter.

I would also reserve decision as to the scope and effect of the Suspension of Work clause that was included in the contract in this case. Apparently both the contractor and the AEC Advisory Board on Contract Appeals considered that this clause has no application to any of the claims presented by the contractor. However, defendant argues that the Suspension of Work clause authorizes the contracting officer to pay the costs incurred by the contractor as a result of Government delays. A decision as to the application of that clause might have an important bearing on other questions to be decided in this case. However, as Judge Davis has pointed out, this case does not present that issue in its present posture.

With the foregoing preliminary statement, I concur in the result reached by the majority on the six claims covered by the trial commissioner's order.

DAVIS, Judge (concurring in part and dissenting in part).

1. I concur with the court in rejecting the Government's broad contention that the Disputes clause demands that *all* factual matters connected with the contract—whatever the nature of the claim—be tried and determined only by the agency board (or representative), with finality attaching to all those administrative factual findings which are adequately supported. That has never

been the law during the long history of Disputes clauses. On the contrary, the finality of such findings has been recognized only when the board was considering a contractor's request under some contract provision (like the Changes, Changed Conditions, Termination for Default or for Convenience, or Suspension of Work articles) expressly authorizing the agency to grant an adjustment in price or other specific relief in defined circumstances. These alone are disputed questions "arising under" the contract. Exhaustion of the administrative remedy has not been required and finality has not been accorded where the facts relate to a type of claim, such as for a breach, which the contract does not commit to agency determination. Those disputes are connected with, but do not arise under, the contract. The adminis-

trative board can give no relief under the contract, and therefore cannot finally decide the facts.

This was the accepted distinction before the Wunderlich Act of 1954, 68 Stat. 81, 41 U.S.C. §§ 321–322.[1] There is certainly no ground for saying that that enactment changed this segment of Government contract law. The same rules have continued to be followed since the passage of that statute, both by the administrative agencies and by this court, explicitly and tacitly.[2] As the court's opinion in the present case points out, the Supreme Court's opinion in United States v. Carlo Bianchi & Co., 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963), did not remotely suggest that these long-established rules were wrong or should be changed. That decision dealt solely with a matter conceded to

1. See Phoenix Bridge Co. v. United States, 85 Ct.Cl. 603, 629–630 (1937); Plato v. United States, 86 Ct.Cl. 665, 677–678 (1938); Langevin v. United States, 100 Ct.Cl. 15, 29–31 (1943); Silberblatt & Lasker, Inc. v. United States, 101 Ct.Cl. 54, 80–81 (1944); Beuttas v. United States, 101 Ct.Cl. 748, 767 ff, 771 (1944), rev'd on other grounds, 324 U.S. 768, 65 S.Ct. 1000, 89 L.Ed. 1354 (1945); Holton, Seelye & Co. v. United States, 65 F. Supp. 903, 907, 106 Ct.Cl. 477, 500 (1946); Anthony P. Miller, Inc. v. United States, 77 F.Supp. 209, 212, 111 Ct. Cl. 252, 330 (1948); Hyde Park Clothes, Inc. v. United States, 84 F.Supp. 589, 592, 114 Ct.Cl. 424, 438 (1949); John A. Johnson Contracting Corp. v. United States, 98 F.Supp. 154, 156, 119 Ct.Cl. 707, 745 (1951); Continental Illinois Nat'l Bank & Trust Co. v. United States, 101 F.Supp. 75, 759, 121 Ct.Cl. 203, 246, cert. denied, 343 U.S. 963, 72 S.Ct. 1057, 96 L.Ed. 1361 (1952); Potashnick v. United States, 105 F.Supp. 837, 839, 123 Ct.Cl. 197, 218–220 (1952); Continental Illinois Nat'l Bank & Trust Co. v. United States, 115 F.Supp. 892, 897, 126 Ct.Cl. 631, 640–641 (1953).

2. I give only a relatively few samples. See, e.g., F. H. McGraw & Co. v. United States, 130 F.Supp. 394, 397, 131 Ct.Cl. 501, 506 (1955); John A. Johnson Contracting Corp. v. United States, 132 F. Supp. 698, 701, 132 Ct.Cl. 645, 652 (1955); Railroad Waterproofing Corp. v. United States, 137 F.Supp. 713, 715–716, 133 Ct.Cl. 911, 915–916 (1956); Peter

Kiewit Sons' Co. v. United States, 151 F. Supp. 726, 138 Ct.Cl. 668 (1957); Volentine & Littleton v. United States, 169 F.Supp. 263, 265, 144 Ct.Cl. 723, 726 (1959); Abbett Electric Corp. v. United States, 162 F.Supp. 772, 774, 142 Ct.Cl. 609, 613 (1958); A. S. Schulman Electric Co. v. United States, 145 Ct.Cl. 399 (1959); Snyder-Lynch Motors, Inc. v. United States, 292 F.2d 907, 154 Ct.Cl. 476, 519 (1961); Helene Curtis Industries, Inc. v. United States, Ct.Cl., 312 F.2d 774, decided Feb. 6, 1963; W. H. Edwards Eng'r Corp. v. United States, Ct. Cl., No. 218–59, decided April 5, 1963, slip op., p. 5; Flippin Materials Co. v. United States, Ct.Cl., 312 F.2d 408, decided Jan. 11, 1963; Ekco Products Co. v. United States, Ct.Cl., 312 F.2d 768, decided Jan. 11, 1963; Ideker Constr. Co., IBCA No. 124 (1957), 57–2 B.C.A. par. 1441, pp. 4845–46; Norair Eng'r Corp., ASBCA No. 3527 (1957), 57–1 B.C.A. par. 1283; Craig Instrument Corp., ASBCA No. 6385 (1960), 61–1 B.C.A. par. 2875; Kenneth Holt, IBCA No. 279 (1961), 61–1 B.C.A. par. 3060; Model Eng'r & Mfg. Corp., ASBCA No. 7490 (1962), 1962 B.C.A. par. 3363, p. 17,308; Allied Contractors, Inc., IBCA No. 265 (1962), 1962 B.C.A. par. 3501, pp. 17,864–65. The Advisory Board on Contract Appeals of the Atomic Energy Commission took the same position (see the court's opinion, ante). See, also, Spector, Is it "Bianchi's Ghost"—or "Much Ado About Nothing", 16 Admin. Law Rev. 265, 290–91 (1964).

be within the scope of the Disputes clause.[3]

With this history of almost thirty years, it is far too late to try to interpret the Disputes clause anew, as if the question had emerged for the first time. The practice is too firmly rooted to be puffed aside by grammatical refinements and hortatory appeals to the "plain language" canon. The judicial, administrative, and practical construction of the clause is too entrenched for any but the strongest of assaults. We have been presented with no such overwhelming reason for making this drastic change in Government contract law at this time.

2. I disagree, however, with the majority's holding that well-supported factual findings, appropriately made by the board in deciding a dispute "arising under the contract," are not binding in a court trial of a cause of action which is outside the Disputes clause (e. g., for breach, reformation, etc.). If the board has relevantly and appropriately decided a certain factual issue in connection with a claim under the Changes or Changed Conditions article, etc., and if that finding is adequately sustained by the administrative record, my view is that then the court should accept the finding in deciding the breach claim (or other claim not "arising under the contract"). There should be no *de novo* evidence and no *de novo* finding on that particular factual issue. Of course, court evidence and court findings would be entirely proper as to all factual questions, remaining in the court case, which have not been finally determined by the agency tribunal; only those particular facts which have been actually found, and which survive scrutiny under the Wunderlich Act, would be conclusive. And, of course, a board could not gratuitously exceed its mandate by wandering off and finding facts which are not a true part of, and integral to, its determination under the substantive contract clause being applied.

This position, rather than the court's, seems to me required by the terms of the Disputes clause, the phrasing of the Wunderlich Act, the principle underlying the Bianchi decision, and the policy of collateral estoppel.[4] Once an issue of fact arises in a controversy under the contract and is decided by the agency, the text of the Disputes clause makes that decision, if supported, final and conclusive on the parties—not simply final and conclusive for a special purpose, but final and conclusive without qualification and without limitation. The statute, too, is framed in terms of the conclusiveness, without restriction, of any supportable factual decision by the board "in a dispute involving a question arising under such contract."[5] The wording of both the Act and the contract clause seem to grant finality to all factual findings properly made by the board in the course of resolving a disputed question under the contract—not merely to the board's findings on disputed issues of fact which

3. In the case at bar, the defendant does not rely on Bianchi to support its broad position. The Government's Supplementary Memorandum (p. 10) says, after quoting a sentence from the Bianchi opinion, 373 U.S. at 714, 83 S.Ct. 1409, "Thus, Bianchi does not decide the scope of the standard disputes agreement in Government contracts, beyond the recognition that no argument was addressed to this question."

4. I know of no decision of this court which has addressed itself to this exact problem.

5. 41 U.S.C. § 321 provides: "No provision of any contract entered into by the United States, relating to the finality or conclusiveness of any decision of the head of any department or agency or his duly authorized representative or board in a dispute involving a question arising under such contract, shall be pleaded in any suit now filed or to be filed as limiting judicial review of any such decision to cases where fraud by such official or his said representative or board is alleged: *Provided, however,* That any such decision shall be final and conclusive unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence."

41 U.S.C. § 322 provides: "No Government contract shall contain a provision making final on a question of law the decision of any administrative official, representative, or board."

**618**

themselves necessarily arise under the contract.

The Bianchi opinion articulates the basic rationale for accepting fully the Act and the clause as they are written—avoidance of "a needless duplication of evidentiary hearings and a heavy additional burden in the time and expense required to bring litigation to an end" (373 U.S. at 717, 83 S.Ct. at 1415). This major underpinning of the Bianchi decision likewise supports the finality, in court, of all facts validly found by the board in the course of a determination under the contract. There is no need for a second hearing on an issue already tried and resolved.

This is the same general policy which nourishes the doctrine of collateral estoppel. The court is reluctant, however, to apply that principle to these administrative findings because of the nature and genesis of the boards. The Wunderlich Act, as applied in Bianchi, should dispel these doubts. The Supreme Court made it plain that Congress intended the boards (and like administrative representatives) to be *the* fact-finders within their contract area of competence, just as the Interstate Commerce Commission, the Federal Trade Commission, and the National Labor Relations Board are *the* fact-finders for other purposes. In the light of Bianchi's evaluation of the statutory policy, we should not squint to give a crabbed reading to the board's authority where it has stayed within its sphere, but should accept it as the primary fact-finding tribunal whose factual determinations (in disputes under the contract) must be received, if valid, in the same way as those of other courts or of the independent administrative agencies. Under the more modern view, the findings of the latter, at least when acting in an adjudicatory capacity, are considered final, even in a suit not directly related to the administrative proceeding, unless there is some good reason for a new judicial inquiry into the same facts. See Davis, Administrative Law 566 (1951); Fairmont Aluminum Co. v. Commissioner, 222 F.2d 622, 627 (C.A.

4, 1955). The only reasons the majority now offers for a judicial re-trial of factual questions already determined by valid board findings are the same policy considerations which Congress and the Supreme Court have already discarded in the Wunderlich Act and the Bianchi opinion.

3. With respect to a *de novo* trial, my disposition of the six separate claims with which we have to deal would be as follows:

a. *Pier Drilling Claim:* The only aspect of this claim now before us, on the Government's request for review of the Commissioner's order, is the ruling that plaintiff can introduce *de novo* evidence on the issue of whether it was delayed into the winter (and thereby suffered damage) in the pouring of concrete. This alleged delay in pouring concrete was part of an administrative claim that plaintiff was entitled to relief, under Article 4 (Changed Conditions), for the difficulties met after it encountered "float rock." The Advisory Board could not grant monetary compensation for this delay (United States v. Rice, 317 U.S. 61, 63 S.Ct. 120, 87 L.Ed. 53 (1942)), but under the express words of Article 4 the Board could allow an extension of time for performance. In refusing to give that relief, the Board specifically found that the delay due to the "float rock" did not operate to delay the building construction (i. e., the pouring of concrete). Since this issue was then properly before the Board in the proceeding under Article 4, its finding of fact must be accepted (in my view) if adequately supported. There should be no *de novo* trial of this issue.

b. *Concrete Aggregate Claim:* I agree with the court on this part of the case. The Hearing Examiner never reached the merits of any claim and therefore decided nothing (on the merits) which would be binding here. If the present demand can correctly be deemed one for breach of contract, there should be a full trial. But if the demand properly comes under the contract, the Commissioner should decide whether or not the

Hearing Examiner's ruling on the timeliness of the appeal is to be upheld. If so, the claim is at an end. If not, proceedings here should be suspended to allow the Atomic Energy Commission a reasonable opportunity to determine the merits of the claim. Like the court, I intimate no view as to the character of the claim (breach of contract vs. arising under the contract).

c. *Shield Window Claim:* Plaintiff sought both compensation and an extension of time under Article 4 (Changed Conditions) for this item—just as with the Pier Drilling Claim. Basing its decision on Articles 4 and 9 (Delays—Damages), the Advisory Board, after a full hearing, made findings on the very delay for which plaintiff now seeks compensation. Those findings were rightly part of the Board's determination whether or not to grant an extension of time—relief expressly authorized by Articles 4 and 9. As indicated above, these findings, to the extent sanctioned by the administrative record, should be held binding on this court, and *de novo* evidence (directed at the same factual issues) disallowed. If there are other factual issues not covered by the Board's supportable findings, *de novo* evidence should be permitted.

d. *Shield Door Claim:* I agree with the court that plaintiff is barred by its release from now seeking delay damages on this demand.[6] The claim made administratively was plainly one under the Changes article (Article 3) and therefore within the Board's competence. I do not concur, however, with the court's disposition of this claim on the ground that there is no allegation of arbitrary or capricious action. This is a formal defect which can easily be cured by amendment. If plaintiff does so amend, I would let the Commissioner decide whether he can adequately review the Board's findings in the absence of the oral testimony, e. g., on the basis of the papers and documentary evidence. If such a review would be insufficient, I would suspend proceedings to give the Atomic Energy Commission a chance to correct the record by reconstructing the previous hearing or by holding a new one (see United States v. Carlo Bianchi & Co., supra, 373 U.S. at 717–718, 83 S.Ct. 1409).[7] Bianchi, as I read it, precludes any *de novo* judicial trial where the claim is solely under the contract and there have been administrative findings on the merits.

e. *Amercoat Paint Claim:* I agree with the court. To the extent not released,[8] this claim has been paid.

f. *Delay-Damages Claim:* The Commissioner held that, aside from the matter of the release,[9] the plaintiff's general claim for delay damages tracked the separate individual claims and should follow their disposition. I agree with this conclusion (as presumably the court does, although the opinion does not mention this phase of the case). The general delay damages claim appears to have no independent status of its own but is a recapitulation of the separate demands.

4. There are two types of Bianchi-related issues which this case does not present in its current posture: (a) The extent to which an administrative deter-

---

6. Technically, the question of the release is not now before us on *defendant's* request for review since the Commissioner decided that point in favor of defendant. Plaintiff did not seek review. In the interests of speedy and orderly disposition of the litigation, however, it seems better to dispose of the issue now, rather than when the case comes before us on the merits or on a motion for partial summary judgment. By failing to appeal from the Commissioner's ruling, plaintiff can be deemed to have accepted at least that part of his decision. There is no suggestion in the briefs that plaintiff is preserving its position on that phase of the case.

7. If plaintiff refuses to participate in such renewed administrative proceedings, it should be held to have abandoned the claim. If the Atomic Energy Commission refuses, "the sanction of judgment for the contractor" is available (373 U.S. at 718, 83 S.Ct. at 1415).

8. See footnote 6, supra.

9. The defense of release is raised by the defendant's motion for partial summary judgment which appears to cover more than the six claims now before us.

mination of factual questions directly related to the interpretation (rather than the application) of the contract provisions is binding in court; [10] and (b) the proper procedure where the contractor, without having pursued administrative remedies under the contract, sues for a breach, while the defendant contends that the claim *could* and *should* have been framed as a demand for administrative relief under some specific clause of the contract. Since Bianchi, the court has not decided these questions (and does not do so now), and I continue to reserve my position until the issues must be faced. Cf. WPC Enterprises, Inc. v. United States, Ct.Cl., 323 F.2d 874, 878, decided Oct. 11, 1963.

10. This is one aspect of the so-called "fact vs. law" question under the Wunderlich Act.